UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| BALISE MOTOR SALES CO., D/B/A READY CREDIT ENFIELD *Plaintiff*, *v.* APPLUS TECHNOLOGIES, *Defendant*. | Civil No. 3:12cv1676 (JBA) December 20, 2013 |
| --- | --- |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff Balise Motor Sales Company formerly performed vehicle emissions inspections for motorists required by the State of Connecticut ("the State" or "Connecticut"). Following the rejection of its application for continued participation in this program, Plaintiff brought suit against Defendant Applus Technologies, Inc., the contractor chosen by the State to administer the inspection program. Plaintiff's Amended Complaint [Doc. # 35] asserts claims for (1) breach of contract and (2) the duty of good faith and fair dealing, (3) negligence, (4) violation of the Connecticut Unfair Trade Practices Act ("CUPTA"), (5) deprivation of a property interest without due process in violation of 42 U.S.C. § 1983, and (6) tortious interference with business expectancy. Defendant moves [Doc. # 37] to dismiss the Amended Complaint in its entirety for failure to state a claim and lack of subject matter jurisdiction. For the reasons that follow, Defendant's motion is granted.

## I. Factual Allegations

Plaintiff alleges that one of the "primary objectives" of Defendant's contract with the State to administer the emissions testing program was "to better serve Connecticut's citizens" as well as "DMV stakeholders and business partners," including Plaintiff. (Am.

Compl. ¶¶ 11–14; Contract DMV–EM–11–001 (the "DMV Contract"), Ex. 1 to Daponte Suppl. Aff. [Doc. # 40-1] at 5.) An appendix to the DMV Contract ("Schedule M") identified Plaintiff as one of 225 businesses that were in consideration to be chosen to perform emissions testing. (Am. Compl. ¶ 17; Sch. M to DMV Contract at 14.) Plaintiff claims that although it "met all requirements to become a test center under the" DMV Contract, "Defendant informed Plaintiff that it was not selected for participation . . . without providing any reason or basis for the denial." (Am. Compl. ¶¶ 16, 20.)

Plaintiff claims that its inclusion on Schedule M establishes that it was a third-party beneficiary to the DMV Contract, and Defendant "breached the contract by failing to fairly and accurately administer the criteria by which a facility could participate in the emissions test program" and "exceeded" its authority by "revoking" the licenses of test centers that met the program requirements. (Am. Compl. Count One ¶¶ 26–28.) Additionally, Plaintiff alleges that this same conduct gives rise to claims for breach of the implied covenant of good faith and fair dealing in the DMV Contract (Count Two), negligence (Count Three), a CUPTA violation (Count Four), deprivation of property interests without due process of law (Count Five), and tortious interference with Plaintiff's business expectancy (Count Six).

## II. Discussion

Defendant moves to dismiss Plaintiff's Amended Complaint in its entirety, on the grounds that the Court lack subject matter jurisdiction under Fed. R. Civ. P 12(b)(1)[1] and that Plaintiff has failed to state a claim for which relief can be granted under 12(b)(6).[2]

---

[1] "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

**A. Count One: Breach of Contract**

Plaintiff asserts that its inclusion on Schedule M of the DMV Contract (the "proposed" network breakdown)—along with its status as a "DMV stakeholder" with a longstanding license to conduct emissions testing—manifests the intent of Defendant and the State to make Plaintiff a third-party beneficiary to the DMV Contract.[3] (*See* Pl.'s Opp'n [Doc. # 39] at 15; Am. Compl. ¶¶ 23–26.) In support of this argument, Plaintiff cites the introductory language of the DMV Contract, which states that the contract's

---

it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (alterations in original).

[3] Defendant argues that Plaintiff does not have standing to pursue its breach of contract claim because the Amended Complaint contains no allegations of "fraud, corruption or favoritism." (*See* Def.'s Mem. Supp [Doc. # 37-1] at 6.) The standard cited by Defendant applies only to a claim brought under Connecticut's competitive bidding statutes, not a breach of contract claim. *See Ardmare Const. Co. v. Freedman*, 191 Conn. 497, 504–05 (1983) ("[W]e held that where fraud, corruption or acts undermining the objective and integrity of the bidding process existed, an unsuccessful bidder did have standing under the public bidding statute."). Plaintiff does not challenge Defendant's bid for the emissions testing contract with the State, but rather alleges that Defendant breached a contractual obligation that it owed directly to Plaintiff.

purpose is "to better serve Connecticut's citizens and DMV stakeholders and business partners." (DMV Contract at 5.)

Contract intent is determined "from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties." *Dow & Condon, Inc. v. Brookfield Dev. Corp.*, 266 Conn. 572, 580 (2003) (internal quotation marks omitted). The parties must have "intended to create a *direct obligation*" to a third party for it to be a beneficiary to the contract. *Gateway Co. v. DiNoia*, 232 Conn. 223, 231 (1995). The mere "intent to confer a benefit is irrelevant." *Id.*

A court lacks subject matter jurisdiction to hear a contract claim from a person who is neither a party to nor a beneficiary of a contract, because there is no "justiciable controversy." *Tuvia Convalescent Ctr., Inc. v. Nat'l Union of Hosp. & Health Care Employees, a Div. of RWDSU, AFL-CIO*, 717 F.2d 726, 729 n.1 (2d Cir. 1983). Accordingly, if Plaintiff is not a third-party beneficiary to the DMV Contract, its breach of contract claim is properly dismissed under Rule 12(b)(1), rather than Rule 12(b)(6). *Id.*; *see also Tomlinson v. Bd. of Educ. of City of Bristol*, 226 Conn. 704, 718 (1993) ("It is well settled that one who is neither a party to a contract nor a contemplated beneficiary thereof . . . lacks standing to bring her claim for breach of the agreement" and "the court is without subject matter jurisdiction." (internal citations, quotation marks, and alterations omitted)).

There is no language in the DMV Contract to plausibly suggest that the parties intended to assume a direct obligation to DMV stakeholders or the 225 existing test centers in the "proposed network." Although Plaintiff had a long-standing license to

conduct emissions testing before Defendant became THE administrator, Plaintiff's anticipation that this relationship would continue cannot support a plausible inference that Plaintiff was an intended third-party beneficiary. At most, the parties intended to potentially confer a benefit upon Plaintiff, which is insufficient to establish that it was a third-party beneficiary. *See Gateway Co.*, 232 Conn. at 231 (1995) ("The intent to confer a benefit is irrelevant to the determination of whether Gateway was a third party beneficiary."). Because Plaintiff lacks standing to assert a claim under the DMV Contract, there is no justiciable controversy under the contract, and Count One must be dismissed for lack of subject matter jurisdiction.

**B. Count Two: Breach of the Duty of Good Faith and Fair Dealing**

Because Plaintiff's contract claim fails, Count Two fails as well given that "the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." *Macomber v. Travelers Prop. and Cas. Corp.*, 261 Conn. 620, 638 (2002) (quoting *Hoskins v. Titan Value Equities Group, Inc.*, 252 Conn. 789, 793 (2000)). Accordingly, Count Two is also dismissed for lack of subject matter jurisdiction.

**C. Count Three: Negligence**

Plaintiff contends that Defendant's administration of the program was negligent, because it (1) "failed to properly investigate the qualifications, credentials and expertise of the applicants;" (2) "failed to properly calculate the number of test centers needed;" and (3) "failed to include centers in the new program that met or exceeded state requirements." (Am. Compl. Count Three ¶ 30.) Defendant asserts that Plaintiff's allegation fails as a matter of law due to a hold harmless provision in the Program

Participation Agreement, which provided that "if Test Center is not selected, Test Center agrees to be bound by that decision and Applus shall have no obligation toward Test Center." (Program Participation Agreement, Ex. 1 to Daponte Aff. § 1.5.)

While "[t]he law does not favor contract provisions which relieve a person from his own negligence," *B & D Associates, Inc. v. Russell*, 73 Conn. App. 66, 72 (2002), Connecticut "courts have recognized the enforceability of hold harmless provisions releasing a defendant from liability for his own negligence where the parties to the contract are both commercial entities," *Dow-Westbrook, Inc. v. Candlewood Equine Practice, LLC*, 119 Conn. App. 703, 712 (2010). A waiver of liability, however, "must evince the unmistakable intent of the parties." *B & D Associates, Inc.*, 73 Conn. App. at 73 (quoting *Gross v. Sweet*, 49 N.Y.2d 102, 108 (1979)).

The purported hold harmless clause does not express such an intent. In fact, the clause does not refer to liability, but merely states that if Plaintiff is not selected for participation, it "agrees to be bound by that decision." (Program Agreement § 1.5.) This clause could further support the proposition that Defendant assumed no contractual obligation to Plaintiff, but it is not an unambiguous waiver of liability for negligence. *Cf. B & D Associates, Inc.*, 73 Conn. App. at 69 (holding that negligence claim was barred by waiver that stated "there shall be no liability on the part of the LANDLORD to said TENANT and/or to *any* of said persons or classes of persons, or to anyone else for *any* damage or loss to *any* of the foregoing from *any* cause or for *any* reason whatsoever").

Defendant next argues that it owed no duty to Plaintiff on which a negligence claim can be grounded.[4] "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual." *RK Constructors, Inc. v. Fusco Corp.*, 231 Conn. 381, 385 (1994) (internal quotation marks omitted). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Ward v. Greene*, 267 Conn. 539, 547 (2004) (quoting *Calderwood v. Bender,* 189 Conn. 580, 584 (1983)).

Plaintiff asserts that because Connecticut courts have recognized liability for negligent misrepresentation in a business relationship, "it is reasonable to conclude that when the parties have a business relationship that may not be governed by a contract, there is a duty to perform the business services in a reasonable and competent manner." (Pl.'s Opp'n at 18.) Although Plaintiff cites no authority in support of this assertion, even if the Court were to accept its validity, Plaintiff has not plausibly alleged that a business

---

[4] Defendant also argues that because Plaintiff's purported damages are only economic, no recovery can be had in a claim for negligence. (Def.'s Mem. Supp. [Doc. # 37-1] at 11.) Because, as discussed above, there was no contractual relationship between Defendant and Plaintiff, the economic loss doctrine has no application. *See PTI Associates, LLC v. Carolina Int'l Sales Co., Inc.*, No. 3:09-CV-849 (WWE), 2010 WL 363330, at *6 (D. Conn. Jan. 26, 2010) ("The economic loss doctrine is a judicially created doctrine which bars recovery in tort where the relationship between the parties is contractual and the only losses alleged are economic." (internal quotation marks omitted)).

relationship existed between Plaintiff and Defendant. Instead, the gravamen of Plaintiff's complaint is that it sought to establish such a relationship with Defendant and the State, and was wrongly rebuffed. By submitting an application, Plaintiff acknowledged that it was simply "apply[ing] for qualification to participate in the Program," and had not been given an offer to participate. (Program Participation Agreement § 1.2.2.)

Beyond its conclusory assertion that Defendant was obligated to administer the program in a "fair and equitable manner" (Am. Compl. ¶ 29), Plaintiff has failed to plausibly allege that Defendant owed it a duty. The Program Participation Agreement made clear that Defendant had not assumed any contractual obligations to Plaintiff and expressly disclaimed any express or implied promises or obligations to Plaintiff. Accordingly, Plaintiff has failed to allege a viable negligence claim, and Count Three must be dismissed for failure to state a claim. *See Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 631 (2006) ("In her complaint, the plaintiff failed to allege any facts that might have given rise to a duty of care" where the purported contract providing such a duty "eschews any relationship that would give rise to such a duty . . . conferred 'no rights upon' the plaintiff, and did not constitute a contract between [the parties]").

**D. Count Four: CUTPA**

"[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act and that, 'as a result of' this act, the plaintiff suffered an injury." *Abrahams v. Young & Rubicam, Inc.*, 240 Conn. 300, 306 (1997). In determining whether an act is prohibited, Connecticut courts consider the following criteria:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (competitors or other businessmen).

*Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 105–06 (1992) (internal citations and quotation marks omitted). "[A] simple contract breach is not sufficient to establish a violation of CUTPA, particularly where the count alleging CUTPA simply incorporates by reference the breach of contract claim and does not set forth how or in what respect the defendant's activities are either immoral, unethical, unscrupulous or offensive to public policy." *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1038–39 (2d Cir. 1995) (internal quotation marks omitted)).

Plaintiff alleges that Defendant violated "its contractual obligation to the State" by "failing to license all facilities that meet or exceed the program requirements" in order "to increase its own profit margin by reducing the number of facilities it has to visit for testing purposes." (Am. Compl. Count Four ¶¶ 31–32.) The contract between Defendant and the State provided that the "Test Network shall consist of a minimum of" 225 emission test providers. (DMV Contract § 2.1.1.) Contrary to Defendant's assertion, "the express terms" of this contractual provision did not "require[]" it to reduce the total number of test centers from 248 to 225 (Def.'s Mem. Supp. at 3), but it did not preclude Defendant from doing so. Having set forth no other conduct from which it could be plausibly suggested that Defendant's conduct was "immoral, unethical, unscrupulous or

offensive to public policy," Plaintiff fails to state a CUPTA claim. *See Boulevard Assocs.*, 72 F.3d at 1038–39; *see also Ramirez v. Health Net of Ne., Inc.*, 285 Conn. 1, 22 (2008) ("In the present case, however, the plaintiff's claims fail as a matter of law because he has alleged nothing more than that, in terminating his membership, the defendant had availed itself of the rights afforded under the plain and unambiguous terms of the agreement, none of which was hidden or otherwise withheld from the plaintiff.").

**E. Count Five: Deprivation of a Protected Property Interest Without Due Process**

Plaintiff alleges that the failure to renew its inspection license resulted in it being deprived of a property interest protected by law without due process. (Am. Compl. Count Five ¶ 32.) At oral argument, Plaintiff contended that the property interest arose because Plaintiff was an existing test center that met the program requirements and was identified on Schedule M.

"To succeed on a claim of procedural due process deprivation under the Fourteenth Amendment . . . a plaintiff must first establish that state action deprived him of a protected property interest." *Spinelli v. City of New York*, 579 F.3d 160, 168 (2d Cir. 2009). A "'person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

As Plaintiff acknowledged at oral argument, "[p]roperty interests are created, and their dimensions defined, by state law." *RR Village Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1201 (2d Cir. 1987). Even assuming that Defendant is a "state actor" for this

analysis, "no property interest is implicated by the nonrenewal of a contract or license where there is no entitlement to the renewal." *Richardson v. Town of Eastover*, 922 F.2d 1152, 1157 (4th Cir. 1991) (citing *Roth*, 408 U.S. at 564); *see also Harlen Ass'n v. Inc. Vill. of Mineola*, 273 F.3d 494, 504 (2d Cir. 2001) ("[E]ntitlement turns on whether the issuing authority lacks discretion to deny the permit, *i.e.*, is required to issue it upon ascertainment that certain objectively ascertainable criteria have been met.") (internal citation and quotation marks omitted).

Although Plaintiff was a long-standing test center and may have met the qualifications to continue in this role, its inclusion on Scheme M does not establish its entitlement to do so. Rather, Schedule M merely identified a "proposed" network, and Plaintiff "had no more than an expectation as an applicant" to have its inspection license renewed, which is not a legally protected property interest. *Yale Auto Parts, Inc. v. Johnson*, 593 F. Supp. 329, 333 (D. Conn. 1984). Accordingly, Count Five must be dismissed for failure to state a claim.

**F. Count Six: Tortious Interference with a Business Expectancy**

Plaintiff's final claim is that Defendant's nonrenewal of its license interfered with the "many business relationships" that Plaintiff developed "as a result of its existing license as an emissions testing center." (Am. Compl. Count Six ¶ 29.) Plaintiff's allegation must contain factual assertions plausibly showing: "(1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was cause[d] by the defendant's

tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351 (2007) (quoting *Robert S. Weiss & Assocs., Inc. v. Wiederlight*, 208 Conn. 525, 535–36 (1988)).

Because a tortious interference claim requires allegations that Defendant wrongfully interfered with Plaintiff's business relationship with a third party, Plaintiff cannot predicate this claim on unrealized business expectations with Defendant or the State. Instead, the only basis for this claim is that Defendant interfered with Plaintiff's expectation of continued future business from its emissions testing customers. *See Sportsmen's Boating Corp. v. Hensley*, 192 Conn. 747, 754 (1984) ("The law does not . . . restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interferences with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry." (quoting *Skene v. Carayanis*, 103 Conn. 708 (1926) (alteration in original)).

Plaintiff must allege not just that Defendant's actions proximately caused Plaintiff's loss of business, but also "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation; or that the defendant acted maliciously." *Id.* (internal quotation marks and citations omitted). The conduct forming the basis for Plaintiff's tortious interference claim—that Defendant failed to award it the emissions testing contract to which it was entitled—is the same conduct underlying its CUPTA claim. As discussed above, just as Plaintiff has failed to plausibly allege wrongful conduct under CUPTA, it has also failed to allege that Defendant "was guilty of fraud, misrepresentation, intimidation or molestation; or that the defendant acted maliciously" in not selecting Plaintiff. *Id.* at 754. Accordingly, Count Six must be dismissed for failure to state a claim.

## III. Conclusion

For the reasons discussed above, Defendant's Motion [Doc. # 37] to Dismiss is GRANTED on all counts. The Clerk is directed to close the case.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 20th day of December, 2013.